UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| LARRY W. JANDER, RICHARD J. WAKSMAN, *and all other individuals similarly situated*, | : <br> :     15cv3781 <br> : <br> :     OPINION & ORDER |
|          Plaintiffs, | |
|          -against- | |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, *et al.*, | |
|          Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WILLIAM H. PAULEY III, District Judge:

       In October 2014, International Business Machines Corp. ("IBM") announced that it was taking a $2.4 billion write-down in connection with transferring its microelectronics business to another company. Following that announcement—which coincided with the disclosure of disappointing third-quarter operating results—IBM's share price dropped by approximately 17%. Two separate cases pending before this Court allege that Generally Accepted Accounting Principles ("GAAP") required IBM and its corporate officers to record an earlier impairment of its microelectronics assets, and that IBM's stock price was overvalued and fell as a result of the divestiture announcement.

       Jander and Waksman, on behalf of participants in IBM's 401(k) Plus Plan (the "Plan") who invested in the IBM Company Stock Fund (the "Fund") between January 21, 2014 and October 20, 2014, bring this action under Section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. The Amended Complaint names IBM as a defendant, along with the Retirement Plans Committee of IBM, Richard Carroll (IBM's Chief Accounting Officer) Martin Schroeter (IBM's CFO), and Richard Weber (IBM's general counsel).

Defendants move to dismiss the Amended Complaint for failure to state a claim. Defendants' motion to dismiss is granted with leave to replead.

## BACKGROUND

The Plan is a defined-contribution benefit plan, sponsored by IBM that permits employees to defer some of their compensation into a number of various investment options. One of those options is the Fund, which is predominantly invested in IBM common stock. (AC ¶¶ 3, 26.) Such plans are known as employee stock ownership plans (or "ESOPs"). Throughout the class period, both Schroeter and Weber were members of the Retirement Plans Committee; thus, each was a "named fiduciary" under ERISA. (AC ¶¶ 22, 24–25.) As the Plan Administrator, Defendant Carroll was also a named fiduciary. Plaintiffs allege that IBM was a de facto fiduciary because it had ultimate oversight and was empowered to amend the Plan. (AC ¶¶ 21, 27–33.)

In a separate Opinion & Order, filed simultaneously, this Court addressed substantially similar factual allegations brought by shareholders under Section 10(b) of the Securities Exchange Act. See Int'l Assoc. of Heat and Frost Insulators and Asbestos Workers Local #6 Pension Fund v. International Business Machines Corporation, 15cv2492 (S.D.N.Y.) ("the Insulators Securities Action"). Familiarity with that Opinion & Order is presumed, and the allegations concerning Microelectronics' alleged impairment are not repeated here.[1]

## LEGAL STANDARD

To withstand a motion to dismiss, pleadings "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Courts must accept as true all well-pleaded factual allegations. See Hooks v. Forman,

---

[1] Unlike the Insulators Securities Action, the Amended Complaint in this case does not incorporate allegations from confidential witnesses concerning IBM's manufacturing plants.

Holt, Eliades & Ravin, LLC, 717 F.3d 282, 284 (2d Cir. 2013). Additionally, courts may consider "legally required public disclosure documents filed with the SEC" as well as documents "incorporated into the complaint by reference" or relied upon by the plaintiff "in bringing suit." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

## DISCUSSION

Pursuant to 29 U.S.C. § 1104(a)(1)(B), "ERISA imposes an obligation on fiduciaries to 'act in a prudent manner under the circumstances then prevailing,' a standard that eschews hindsight and focuses instead on the 'extent to which plan fiduciaries at a given point in time reasonably could have predicted the outcome that followed.'" In re Lehman Bros. Sec. & ERISA Litig., 113 F. Supp. 3d 745, 754 (S.D.N.Y. 2015) (quoting Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt., Inc., 712 F.3d 705, 716 (2d Cir. 2013)). Plaintiffs allege that Defendants failed to prudently and loyally manage the Plan's assets, and failed to adequately monitor the Plan's fiduciaries. Specifically, they argue that once Defendants learned that IBM's stock price was artificially inflated, Defendants should have either disclosed the truth about Microelectronics' value or issued new investment guidelines temporarily freezing further investments by the Fund in IBM stock.

In support of their motion to dismiss, Defendants argue, among other things, that: (1) Plaintiffs fail to plead that the Microelectronics assets were impaired; (2) IBM was not a fiduciary; (3) Plaintiffs' proposed alternative actions fail to satisfy the standard set forth in Fifth Third Bancorp v. Dudenhoeffer, 134 S. Ct. 2459 (2014) and its progeny; and (4) the "duty to monitor" claim is derivative of Plaintiffs' underlying claims.

I. <u>Impairment of Microelectronics' Assets</u>

Both parties incorporate the arguments made in the <u>Insulators</u> Securities Action concerning Defendants' alleged obligation to write-down Microelectronics' value under GAAP. In <u>Insulators</u>, this Court found that plaintiffs had plausibly alleged a GAAP violation, but failed to sufficiently allege scienter as required by the Private Securities Litigation Reform Act and Federal Rule of Civil Procedure 9(b). However, "allegations similar to fraud do not implicate Rule 9(b) where 'the gravamen of the claim is grounded in ERISA.'" <u>In re Polaroid ERISA Litig.</u>, 362 F. Supp. 2d 461, 470 (S.D.N.Y. 2005) (quoting <u>Rankin v. Rots</u>, 278 F. Supp. 2d 853, 866 (E.D. Mich. 2003)); <u>see also</u> <u>In re Bear Stearns Companies, Inc. Secs., Derivative, & Employee Ret. Income Sec. Act (Erisa) Litig.</u>, No. 08-md-1963 (RWS), 2009 WL 50132, at *4 (S.D.N.Y. Jan. 5, 2009) (noting that unlike securities fraud cases, ERISA cases are not governed by the PSLRA). Thus, for purposes of evaluating the Amended Complaint in this action, this Court need not consider whether Plaintiffs have alleged, with particularity, that "the failure to take a write-down amounted to highly unreasonable conduct which represents an extreme departure from the standards of ordinary care." <u>Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce</u>, 694 F. Supp. 2d 287, 301 (S.D.N.Y. 2010) (quotations, citations, and alterations omitted).

Plaintiffs allege that the Plan fiduciaries "knew that IBM's stock price had been artificially inflated by undisclosed material facts," namely that the "Microelectronics business was hemorrhaging money and that IBM could not sell it without having to pay another company $1.5 billion to take the failing business off its hands." (AC ¶¶ 8, 10.) Specifically, Plaintiffs allege that: (1) Schroeter, as CFO, was a Sarbanes-Oxley co-signatory of IBM's SEC filings and made many of the allegedly misleading statements; (2) Weber played a central role in preparing IBM's financial reporting; and (3) Carroll was the most senior accounting officer at IBM with intimate knowledge of Microelectronics' financial condition. While such allegations are

insufficient to allege scienter under the PSLRA, in view of the lower pleading standards applicable to an ERISA action, Plaintiffs have plausibly pled that IBM's Microelectronics unit was impaired and that the Plan fiduciaries were aware of its impairment.

II. IBM as Fiduciary

In ERISA cases, "[a] threshold question is whether each defendant acted as a plan fiduciary." In re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig., 756 F. Supp. 2d 330, 346 (S.D.N.Y. 2010) (citing Pegram v. Herdrich, 530 U.S. 211, 226 (2000)). Fiduciaries include both "named fiduciaries" as well as "anyone else who exercises discretionary control or authority over the plan's management, administration, or assets." Mertens v. Hewitt Assocs., 508 U.S. 248, 251 (1993) (internal citations omitted). Fiduciaries of the latter type are referred to as "de facto fiduciaries." See In re AOL Time Warner, Inc. Sec. & ERISA Litig., No. 02-cv-08853, 2005 WL 563166, at *4 n.5 (S.D.N.Y. Mar. 10, 2005).

Plaintiffs allege that IBM was a de facto fiduciary because it had ultimate oversight and was empowered to amend the Plan. But courts routinely reject "[s]uch bare legal conclusions" as "insufficient to state a claim against a purported ERISA fiduciary." In re JPMorgan Chase & Co. ERISA Litig., No. 12-cv-04027 (GBD), 2016 WL 110521, at *3 (S.D.N.Y. Jan. 8, 2016) ("Plaintiffs have pleaded no facts to support the allegation that JPMorgan was a de facto Plan fiduciary. They have made only the conclusory allegation that JPMorgan was such a fiduciary because it has discretionary authority and control regarding the administration and management of the Plan[] and its assets."). See also In re Bank of Am. Corp. Secs., Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig., 756 F. Supp. 2d 330, 346–48 (S.D.N.Y. 2010) (rejecting as insufficient allegations that the defendant created the ESOP, selected its terms, executed the trust documents, exercised control over the members of the plan committee, and appointed the trustee); In re Citigroup ERISA Litig., No. 07-cv-9790, 2009 WL

2762708, at *15 (S.D.N.Y. Aug. 31, 2009) ("[T]he allegation that [a defendant] had the authority to hire and fire some of its named fiduciaries . . . is insufficient to show that [the defendant] exerted control over its employees' fiduciary responsibilities."), aff'd, In re Citigroup ERISA Litig., 662 F.3d 128 (2d Cir. 2011).  Plaintiffs therefore do not sufficiently plead that IBM was a de facto fiduciary.

### III. Alleged Alternative Actions in view of Dudenhoeffer and its Progeny

In Dudenhoeffer, the Supreme Court rejected the presumption—previously applied by the Second Circuit—that ESOP fiduciaries who invested their plans' assets in the employer's stock were acting in accord with ERISA.  See Rinehart v. Lehman Bros. Holdings Inc., 817 F.3d 56, 64 (2d Cir. 2016) (citing Dudenhoeffer, 134 S. Ct. at 2463).  The Court then explained that "allegations that a fiduciary should have recognized from publicly available information alone that the market was over- or undervaluing a stock" were "implausible as a general rule."  Dudenhoeffer, 134 S. Ct. at 2471 (emphasis added).  Defendants attempt to frame this action as falling into that category, citing publicly available news articles indicating that Microelectronics was unprofitable and that IBM was having difficulty selling it.  But these arguments about what the market "knew" are not derived from the Amended Complaint.  Moreover, they are essentially indistinguishable from Defendants' loss causation arguments, which courts have held are generally inappropriate for resolution on a motion to dismiss.  See In re Bear Stearns Companies, Inc. Secs., Derivative, & ERISA Litig., 763 F. Supp. 2d 423, 507 (S.D.N.Y. 2011) ("[A]t the motion to dismiss stage, [a c]omplaint need not rule out all competing theories for the drop in . . . stock price; that is an issue to be determined by the trier of fact on a fully developed record.").  Regardless, Plaintiffs' allegations clearly focus on nonpublic information allegedly known by Defendants.  (See, e.g., AC ¶ 79 ("Throughout the Class Period, defendants were aware of these misleading statements and IBM's failures to disclose the truth about its Microelectronics business.  Yet defendants did nothing to act upon that knowledge to

6

protect the retirement savings of the Plan participants to whom they owed their fiduciary duties.")).

Dudenhoeffer also set forth the pleading standard for cases in which fiduciaries allegedly "behaved imprudently by failing to act on the basis of nonpublic information that was available to them because they were . . . insiders." Dudenhoeffer, 134 S. Ct. at 2471–72.  For such claims, "[p]laintiffs must satisfy two requirements to state a claim for breach of the duty of prudence on the basis of inside information."  In re JPMorgan Chase & Co. Erisa Litig., No. 12 CIV. 04027 (GBD), 2016 WL 110521, at *3 (S.D.N.Y. Jan. 8, 2016).  Thus, plaintiffs must plausibly allege: (1) "an alternative action that the defendant could have taken that would have been consistent with the securities laws," and (2) "that a prudent fiduciary in the same circumstances [as Defendants] would not have viewed [the alternative action] as more likely to harm the fund than to help it."  Dudenhoeffer, 134 S. Ct. at 2472.

A.  Alternative Actions

Plaintiffs allege that once Defendants learned that IBM's stock price was artificially inflated, Defendants should have either disclosed the truth about Microelectronics' value or issued new investment guidelines that would temporarily freeze further investments in IBM stock.  Defendants argue that the former proposed alternative action—the issuance of "corrective disclosures"— would conflict with the securities laws.

"The securities laws create a system of periodic rather than continual disclosures." Higginbotham v. Baxter Int'l, Inc., 495 F.3d 753, 760 (7th Cir. 2007); see also In re Turkcell Iletisim Hizmetler A.S. Secs. Litig., 202 F. Supp. 2d 8, 13 (S.D.N.Y. 2001) ("The disclosure structure set out by the SEC and the case law recognizes how unworkable and potentially misleading a system of instantaneous disclosure out[side] the normal reporting periods would be.").  In Dudenhoeffer, the Court recognized the possibility that the issuance of corrective disclosures (or the decision to alter trading strategies in view of inside information) could be

7

inconsistent with the securities laws, explaining that courts should consider: (1) "that the duty of prudence, under ERISA as under the common law of trusts, does not require a fiduciary to break the law"; and (2) "the extent to which an ERISA-based obligation either to refrain on the basis of inside information from making a planned trade or to disclose inside information to the public could conflict with the complex insider trading and corporate disclosure requirements imposed by the federal securities laws or with the objectives of those laws." Dudenhoeffer, 134 S. Ct. at 2472–73.  The Second Circuit has also expressly "reject[ed] the argument that fiduciaries have a duty to disclose nonpublic information about the expected performance of the employer's stock." Gearren v. The McGraw-Hill Companies, Inc., 660 F.3d 605, 610 (2d Cir. 2011); see also In re Lehman Bros. Secs. & ERISA Litig., 113 F. Supp. 3d 745, 768 (S.D.N.Y. 2015) (concluding that Dudenhoeffer did not abrogate the Second Circuit's "rejection of a duty to share nonpublic information with plan beneficiaries").

Defendants argue that the disclosure of any "real-time suspicions" that Microelectronics was overvalued would have "conflict[ed] with a disclosure regime designed to avoid imposing unsustainable burdens on companies and to prevent investors from having to wade through a continuous torrent of disclosures that vary widely in significance and reliability." (Defs' Mem. of Law at 19.)  But Plaintiffs are not suggesting "real time" disclosure of suspicions.  The Amended Complaint does not imply that any of the Defendants should have engaged in immediate ad-hoc disclosures regarding the value of Microelectronics unit.  Rather, the Amended Complaint catalogues a number of allegedly incorrect disclosures made under the Securities Exchange Act's disclosure regime (see, e.g., AC ¶ 49 (alleging that the February 25, 2014 Form 10-K incorrectly asserted that long-lived assets are properly tested for impairment), and further alleges that the Defendants were "senior corporate officers with direct responsibility" for such disclosures (AC ¶¶ 32, 34.)  Accordingly, drawing all inferences in Plaintiffs' favor, the Amended Complaint alleges that Defendants were—prior to the end of the proposed class

period— in a position to have directed the issuance of corrected statements regarding the valuation of IBM's Microelectronics unit that would have been entirely consistent with their obligations under federal securities laws.

### B. Harm of the Alternative Actions

Although Plaintiffs' proposed alternative actions would not necessarily conflict with the securities laws, the Amended Complaint fails to satisfy the second prong of Dudenhoeffer's alternative-action test. Dudenhoeffer recognized the possibility that prudent fiduciaries could "conclude[] that stopping purchases—which the market might take as a sign that insider fiduciaries viewed the employer's stock as a bad investment—or publicly disclosing negative information would do more harm than good to the fund by causing a drop in the stock price and a concomitant drop in the value of the stock already held by the fund." Dudenhoeffer, 134 S. Ct. at 2473. Thus, a complaint must contain "facts and allegations" which "'plausibly allege[]' that a prudent fiduciary in the same position 'could not have concluded' that the alternative action 'would do more harm than good.'" Amgen Inc. v. Harris, 136 S. Ct. 758, 760 (2016) (emphasis added) (quoting Dudenhoeffer, 134 S. Ct. at 2473.) Two recent cases in this Circuit confirm that this is a highly exacting standard which is difficult to satisfy.

In Rinehart v. Lehman Bros. Holdings Inc.—a case in which an ESOP invested in the stock of a company only three months away from total collapse—the Second Circuit affirmed the dismissal of ERISA claims, noting that "[a] prudent fiduciary could have concluded that divesting Lehman stock, or simply holding it without purchasing more, 'would do more harm than good.'" Rinehart, 817 F.3d 56, 68 (2d Cir. 2016) (quoting Amgen, 136 S. Ct. at 760.) As the district judge in that case recognized, "divesting the [ESOP] of Lehman stock would have accelerated Lehman's collapse and reduced the Plan's value." In re Lehman Bros., 113 F. Supp. 3d at 762–63. Likewise, in In re JPMorgan Chase & Co. Erisa Litig.—an ERISA stock-drop case concerning JP Morgan's alleged concealment of extraordinarily risky trading by the so-

9

called "London Whale"—the court rejected alternative remedies identical to those proposed here, finding that Dudenhoeffer's "higher pleading standard" requires "enough facts to plausibly allege that a prudent fiduciary in Defendants' circumstances would not have believed that public disclosures of JPMorgan's purported misconduct were more likely to harm than help the fund." In re JPMorgan, 2016 WL 110521, at *4.

Here, Plaintiffs proposed the same remedies offered in Rinehart and In re JPMorgan. Like the plaintiffs in those cases, they fail to plead facts giving rise to an inference that Defendants "could not have concluded" that public disclosures, or halting the Plan from further investing in IBM stock, were more likely to harm than help the fund. See Dudenhoeffer, 134 S. Ct. at 2472.[2]  Indeed, the In re JPMorgan court considered and rejected the argument—asserted by Plaintiffs here—that Dudenhoeffer's pleading standard was not meant to apply to cases involving allegations of an underlying fraud:

> Plaintiffs' allegations of fraud do not excuse them from satisfying Dudenhoeffer. As here, the complaint in Dudenhoeffer alleged that certain ERISA fiduciaries, who were also corporate insiders, knew inside information indicating that the employer's officers had made material misstatements to the market that inflated the price of the employer's stock.

In re JPMorgan, 2016 WL 110521, at *4.  Likewise, Plaintiffs' argument that delay in disclosing an alleged fraud always harms investors in the Plan is "not particular to the facts of this case and could be made by plaintiffs in any case asserting a breach of ERISA's duty of prudence." In re JP Morgan, 2016 WL 110521, at *4; see also Higgenbotham, 495 F.3d at 761 ("[D]elay in correcting a misstatement does not cause the loss; the injury to investors comes from the fraud,

---

[2] In In re JPMorgan, the court recognized that halting an ESOP from investing in the company's stock necessarily "would have required [the company] to disclose that information to the public." In re JPMorgan, 2016 WL 110521, at *3; see also Harris v. Amgen, Inc., 788 F.3d 916, 925–26 (9th Cir. 2015) ("[W]ithdrawal of the fund . . . is the worst type of disclosure: It signals that something may be deeply wrong inside a company but doesn't provide the market with information to gauge the stock's true value) (Kozinski, J., dissenting from denial of rehearing en banc).

not from a decision to take the time necessary to ensure that the corrective statement is accurate.").

Plaintiffs protest that such a reading of Dudenhoeffer sets an impossibly high barrier for ERISA breach-of-fiduciary duty cases concerning ESOPs.  This argument has some merit, as Dudenhoeffer purportedly sought to abrogate a nearly "impossible" pleading standard and replace it with one that would "readily divide the plausible sheep from the meritless goats." 134 S. Ct. at 270.  But the Supreme Court also recognized "that 'Congress sought to encourage the creation of [ESOPs,] a purpose that . . . may come into tension with ERISA's general duty of prudence." Amgen, 136 S. Ct. at 759 (quoting Dudenhoeffer, 136 S. Ct. at 7470.)  Thus, while Dudenhoeffer clarified the standard by which courts need to evaluate such cases, it did not necessarily ease the standard.  Likewise, this Court is not convinced by Plaintiffs' argument that "[i]t cannot be that garden-variety shareholders are entitled to more protection than those to whom a fiduciary duty is owed."  (Opp'n Br. at 13.)  To the contrary, "ERISA and the securities laws ultimately have differing objectives pursued under entirely separate statutory schemes" such that alleged securities law violations do not necessarily trigger a valid ERISA claim.  In re Lehman Bros., 113 F. Supp. 3d at 768–69 ("While the true objects of Plaintiffs' ire may well be the Lehman executives whom Plaintiffs allege made material misstatements regarding the financial health of the company to the detriment of participants in the securities markets, ERISA is not the statutory mechanism to pursue such claims.")

Simply put, Dudenhoeffer sets a highly demanding pleading standard.  Because the Amended Complaint offers only a rote recitation of proposed remedies without the necessary "facts and allegations supporting [Plaintiffs'] proposition," Amgen, 136 S. Ct. at 760, it fails to meet that threshold.

In the alternative, Plaintiffs seek leave to file a Second Amended Complaint that "would allow plaintiffs to undertake the necessary due diligence to provide facts of this greater

specificity, including those data regarding the Fund's Class Period purchases . . . and possibly retaining an expert to perform a quantitative analysis to show more precisely how Plan participants are harmed in the short and long term by purchasing Fund shares at artificially high prices." (Pls' Sur-reply (ECF No. 26-1) at 6). In view of Amgen's express recognition that removing a company's stock from the list of investment options could potentially satisfy Dudenhoeffer, and in view of the Supreme Court's emphasis that "the stockholders are the masters of their complaint," 136 S. Ct. at 760, such a request is entirely appropriate.

IV.   Duty to Monitor

Plaintiffs' duty to monitor claim is derivative of their claims for breach of the duties of prudence and loyalty. Because Plaintiffs have failed to allege an underlying breach, the duty to monitor claim is dismissed. See Rinehart v. Akers, 722 F.3d 137, 154 (2d Cir. 2013) ("[W]e affirm the court's dismissal of Plaintiffs' duty to monitor claim as derivative of Plaintiffs' failed duty of prudence claim."), abrogated on other grounds by Dudenhoeffer, 134 S. Ct. 2459; see also Rinehart v. Lehman Bros. Holdings Inc., 817 F.3d 56, 68 (2d Cir. 2016) ("[N]othing in [Dudenhoeffer] changes our previous analysis dismissing Plaintiffs' duty to monitor and duty to inform claims [holding that] Plaintiffs cannot maintain a claim for breach of the duty to monitor . . . absent an underlying breach of the duties imposed under ERISA.").

## CONCLUSION

Defendants' motion to dismiss is granted and the Amended Complaint is dismissed without prejudice. The Clerk of Court is directed to terminate any pending motions and close this case.

Plaintiffs shall advise this Court within 30 days if they intend to file a Second Amended Complaint, at which point this Court would restore this case to the docket.

Dated: September 7, 2016
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.