# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LARRY W. JANDER, RICHARD J. WAKSMAN, and all other individuals similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RETIREMENT PLANS COMMITTEE OF IBM, RICHARD CARROLL, MARTIN SCHROETER, and ROBERT WEBER,<br><br>Defendants. | Case No. 1:15-cv-03781-WHP |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION AND ADMINISTRATION EXPENSES, AND CASE CONTRIBUTION AWARDS

**ZAMANSKY LLC**
50 Broadway, 32nd Floor
New York, NY  10004
Tel.: (212) 742-1414
Fax: (212) 742-1177

*Counsel for Plaintiffs and Proposed Class Counsel*

# TABLE OF CONTENTS

**Table of Authorities** ......................................................................................................... **iii**

**PRELIMINARY STATEMENT** ................................................................... **1**

**FACTUAL AND PROCEDURAL BACKGROUND** .................................... **1**

**STATEMENT OF LAW** ................................................................................... **4**

**I.**       **Class Counsel's Request for Attorneys' Fees Is Appropriate** ..................... **5**

**II.**      **Class Counsel's Request for Reimbursement of Expenses Is Appropriate** **9**

**III.**     **Named Plaintiffs' Request for Case Contribution Awards Is Appropriate** ................................................................................................................ **10**

**CONCLUSION** ................................................................................................ **11**

# TABLE OF AUTHORITIES

## CASES

*Amgen Inc. v. Harris,*
  *136 S. Ct. 758* (2016) .............................................................................. 5

*Bd. of Trs. of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.,*
  2012 U.S. Dist. LEXIS 79418 (S.D.N.Y. June 7, 2012)............................. 10

*In re Colgate-Palmolive Co. ERISA Litig.,*
  36 F. Supp. 3d 344 (S.D.N.Y. 2014).................................................. 8,9,11

*In re Currency Conversion Fee Antitrust Litig.,*
  263 F.R.D. 110 (S.D.N.Y. 2009) ................................................................ 7

*Dial Corp. v. News Corp.,*
  317 F.R.D. 426 (S.D.N.Y. 2016) ................................................................ 5

*Fifth Third Bancorp v. Dudenhoeffer,*
  573 U.S. 409 (2014)................................................................................... 6

*Goldberger v. Integrated Res., Inc.,*
  209 F.3d 42 (2d. Cir. 2000)................................................................... 6,7,9

*Hicks v. Morgan Stanley & Co.,*
  2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 24, 2005) ........................... 8

*Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers Local #6 Pension Fund v.
  IBM,*
  205 F. Supp. 3d 527 (S.D.N.Y. 2016)........................................................ 7

*Jander v. Ret. Plans Comm. of IBM,*
  910 F.3d 620 (2d Cir. 2018)....................................................................... 2

*Kurzweil v. Philip Morris Cos., Inc.,*
  1999 WL 1076105 (S.D.N.Y. Nov. 30, 1999)............................................ 8

*Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.,*
  2021 U.S. Dist. LEXIS 2807 (S.D.N.Y. Jan. 7, 2021)............................. 5,6

*In Marsh ERISA Litig.,*
  265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................... 6,11

*Maywalt v. Parker & Parsley Petroleum Co.,*
  67 F.3d 1072 (2d Cir. 1995)....................................................................... 5

*McDaniel v. Cty. of Schenectady,*
   595 F.3d 411 (2d. Cir. 2010)..................................................................... 5

*In re Merrill Lynch & Co. Research Reports Sec. Litig.,*
   246 F.R.D. 156 (S.D.N.Y. 2007) .............................................................. 10

*Miltland Raleigh-Durham v. Myers,*
   840 F. Supp. 235 (S.D.N.Y. 1993) ........................................................... 10

*Rabin v. Concord Assets Grp., Inc.,*
   1991 WL 275757 (S.D.N.Y. Dec. 19, 1991) ............................................ 8

*Ret. Plans Comm. of IBM v. Jander,*
   139 S. Ct. 2667 (2019).............................................................................. 2

*Ret. Plans Comm. of IBM v. Jander,*
   140 S. Ct. 592 (2020)................................................................................ 2

*Ret. Plans Comm. of IBM v. Jander,*
   208 L. Ed. 2d 399 (2020) .......................................................................... 2

*Seijas v. Republic of Argentina,*
   2017 U.S. Dist. LEXIS 64398 (S.D.N.Y. Apr. 27, 2017)......................... 7

*Strougo v. Bassini,*
   258 F. Supp. 2d 254 (S.D.N.Y. 2003) ...................................................... 11

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.,*
   724 F. Supp. 160 (S.D.N.Y. 1989) ........................................................... 6

*Van Vranken v. Atl. Richfield Co.,*
   901 F. Supp. 294 (N.D. Cal. 1995) ........................................................... 8

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
   396 F.3d 96 (2d. Cir. 2005)....................................................................... 6

**Other Authorities**
*An Empirical Study of Class Action Settlements and Their Fee Awards,*
   7 J. Empirical Legal Stud. 811 (2010) ...................................................... 8

## PRELIMINARY STATEMENT

Pursuant to Federal Rule of Civil Procedure 23(h), Plaintiffs Larry W. Jander and Richard Waksman ("Named Plaintiffs") respectfully submit this memorandum of law in support of their motion for an award of attorneys' fees to Class Counsel for services rendered in the Action, reimbursement of litigation costs and expenses incurred in prosecuting the Action and administering the Settlement, and Case Contribution Awards.

Class Counsel are concurrently filing a motion and supporting memorandum of law for final approval of the Settlement Agreement, as defined in those papers, under Federal Rule of Civil Procedure 23(e) (the "Settlement Memorandum"), and the Declaration of Samuel E. Bonderoff in Support of (1) Plaintiffs' Unopposed Motion for Final Approval of Proposed Settlement, Certification of Settlement Class and Approval of the Plan of Allocation, and (2) Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Litigation and Administration Expenses, and Case Contribution Awards (the "Bonderoff Decl.").

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Larry W. Jander filed a class action complaint against Defendants alleging breaches of their fiduciary duties under ERISA on May 15, 2015.  (Dkt. No. 1.)  Plaintiff Richard Waksman joined the lawsuit in an amended complaint that was filed on August 13, 2015.  (Dkt. No. 12.)  Defendants moved to dismiss the action on October 26, 2015 (Dkt. No. 19); that motion was granted without prejudice by the Court on September 7, 2016.  (Dkt. No. 34.)  Plaintiffs filed their second amended complaint on October 21, 2016. (Dkt. No. 38.)  Defendants also moved to dismiss that complaint on December 16, 2016

(Dkt. No. 43), which motion was granted, this time with prejudice, on September 29, 2017. (Dkt. No. 56.)

Plaintiffs filed a notice of appeal to the Second Circuit on October 27, 2017.  (Dkt. No. 58.)  The Second Circuit reversed the Court's decision on December 10, 2018.  *See Jander v. Ret. Plans Comm. of IBM*, 910 F.3d 620 (2d Cir. 2018).

Defendants filed a petition for writ of certiorari from the United States Supreme Court.  Certiorari was granted on June 3, 2019.  *Ret. Plans Comm. of IBM v. Jander, 139 S. Ct. 2667* (2019).  Ultimately, the Supreme Court vacated the Second Circuit's decision and remanded the case to them to decide whether to address certain arguments raised by Defendants and the United States Government.  *See Ret. Plans Comm. of IBM v. Jander*, 140 S. Ct. 592, 594-95 (2020).

On June 22, 2020, the Second Circuit reinstated its original opinion denying Defendants' motion to dismiss.  *See Jander v. Ret. Plans Comm. of IBM¸* 962 F.3d 85 (2d Cir. 2020).  Defendants filed a petition for writ of certiorari to the Supreme Court, which was denied on November 9, 2020.  *Ret. Plans Comm. of IBM v. Jander*, 208 L. Ed. 2d 399 (2020).

After the Second Circuit reinstated its original opinion, the parties resumed their litigation in this Court.  (*See* Dkt. No. 90.)  Both sides have served document requests and interrogatories on each other.  To date, Defendants have produced approximately 500 pages of documents, including numerous records relating to the Retirement Plans Committee of IBM and voluminous data reflecting purchase, sale, and ownership of shares of the IBM Stock Fund during the relevant time period.  (*See* Bonderoff Decl. at ¶¶ 6-7.)

In early 2021, the parties discussed the possibility of exploring settlement through mediation.  Robert Meyer, an esteemed and experienced mediator affiliated with JAMS Mediation, Arbitration and ADR Services ("JAMS"), was selected with the mutual assent of the parties to be the case mediator.  The parties conducted a virtual mediation via Zoom on February 15, 2021.  After several follow-up discussions, the parties ultimately agreed to terms of settlement on February 19, 2021.  On February 23, 2021, the Court was informed of this development and a stay of proceedings was requested.  (*See* Dkt. No. 110.) The Court granted a stay of proceedings on February 23, 2021.  (Dkt. No. 111.)  On April 2, 2021 the Parties executed a Class Action Settlement Agreement and Release.

On April 2, 2021, Plaintiffs filed their Motion to Preliminarily Approve Class Action Settlement, and the Parties appeared before the Court on April 12, 2021.  (Dkt. No. 114.)  On April 21, 2021, the Parties filed a Joint Letter addressing certain items raised by the Court regarding Plaintiffs' Motion to Preliminarily Approve Class Action Settlement and informing the Court that they had executed an Amended Class Action Settlement Agreement and Release, which was filed the same day.  (Dkt. No. 117.)  The Settlement contemplated by the Settlement Agreement provides for Defendants to make a payment of $4,750,000.00 to a Qualified Settlement Fund to be allocated to Participants pursuant to a Plan of Allocation.  In exchange, Plaintiffs and the Plan will dismiss and release their ERISA claims, as set forth in more detail in the Settlement Agreement.  On April 28, 2021, the Court entered the Preliminary Approval Order granting preliminary approval of the Settlement and setting a fairness hearing for July 21, 2021.  (Dkt. No. 118.)

After the entrance of the Preliminary Approval Order, and as set forth in the Declaration of Sara Schwermer-Sween filed herewith, the Plaintiffs retained Rust to carry

3

out the Notice Plan.  Pursuant to the Notice Plan, Rust mailed more than 50,000 copies of the Class Notice to Settlement Class Members, caused the Class Notice to be published in *USA Today* and on PR Newswire, and created a publicly available website to provide information regarding the proposed Settlement to Settlement Class Members.  After the Class Notice was distributed, several dozen Settlement Class members reached out to Class Counsel with questions regarding the settlement, but to date none has filed or expressed any objection to the Settlement being approved.[1]

## STATEMENT OF LAW

By this motion, Class Counsel seek an award of attorneys' fees of $1,425,000, which constitutes 30% of the $4,750,000 settlement fund, as well as reimbursement of litigation expenses in the amount of $90,861.89; in addition, Named Plaintiffs respectfully request Case Contribution Awards in the amount of $10,000 each.

This is an unusual case.  Litigation of the sufficiency of Plaintiffs' initial pleading went on for over six years, resulting in two opinions from this Court, two more from the Second Circuit Court of Appeals, and full briefing and argument before the United States Supreme Court.  Throughout this case, Class Counsel have sought to keep costs down and to prosecute the case in the most efficient manner possible.  Class Counsel is a small law firm, and this case was very leanly staffed, with just one attorney performing roughly two-

---

[1]    On May 26, 2021, the Court received a letter from potential Settlement Class member Marvin S. Dubovick stating "I wish to withdraw from the litigation" on the grounds that he "owned just a few shares of IBM stock." (Dkt. 121.) Class Counsel sent a letter to Mr. Dubovick explaining certain facts about the Settlement, including the provisions of the Plan of Allocation concerning Settlement Class members with *de minimis* losses, and invited him to contact us directly with any additional questions.  To date, Class Counsel has not received any further contact from Mr. Dubovick.

thirds of all of the work billed to the case.  Class Counsel litigated against two of the most esteemed and accomplished law firms in the country, Davis, Polk & Wardwell LLP and Kirkland & Ellis LLP, and premiere Supreme Court advocate and former United States Solicitor General Paul Clement.  During the time that this case has been litigated, *every single other duty-of-prudence case involving an employee stock fund that was filed was dismissed*.  This is the *only* duty-of-prudence case involving an employee stock fund since the Supreme Court's decision in *Amgen Inc. v. Harris*, 136 S. Ct. 758 (2016), to survive a motion to dismiss.

Named Plaintiffs and Class Counsel respectfully suggest that these unusual factors, as well as those discussed below, justify the requested attorneys' fees, reimbursement of expenses, and Case Contribution Awards sought herein.

## I.      Class Counsel's Request for Attorneys' Fees Is Appropriate

To resolve this motion, this Court "must carefully scrutinize lead counsel's application for attorneys' fees to 'ensure that the interests of the class members are not subordinated to the interests of … class counsel." *Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 2021 U.S. Dist. LEXIS 2807, at *12 (S.D.N.Y. Jan. 7, 2021) (Pauley, J.) (quoting *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995)).  The Court is obliged "'to act as a fiduciary who must serve as a guardian of the rights of absent class members.'"  *Id.* (quoting *McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010)).

"The trend in the Second Circuit is to assess a fee application using the 'percentage of the fund' approach, which 'assigns a proportion of the common settlement fund toward payment of attorneys' fees.'"  *Lexmark*, 2021 U.S. Dist. LEXIS 2807, at *12 (quoting *Dial*

*Corp. v. News Corp.*, 317 F.R.D. 426, 433 (S.D.N.Y. 2016) (Pauley, J.)).  "As a 'cross-check on the reasonableness of the requested percentage,' however, courts also look to the lodestar multiplier, which should be a reasonable multiple of the total number of hours billed at a standard hourly rate."  *Id.* (quoting *Goldberger v. Integrated Res., Inc.*, 209 F.3d 42, 53 (2d Cir. 2000)).  Informing both of these analyses should be the six factors enumerated by the Second Circuit in *Goldberger*:  "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."  *Goldberger*, 209 F.3d at 50 (quoting *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989)) (internal quotation marks omitted); *accord Lexmark*, 2021 U.S. Dist. LEXIS 2807, at *12 (citing *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)).

    Applying this analysis, the fees requested by Class Counsel are fair and appropriate.

    As an initial matter, ERISA class actions are particularly risky from the perspective of potential plaintiffs; there is a substantial risk that, in bringing an ERISA class action, the action will fail to obtain any recovery at all for employees.  Unlike securities cases, which "are, in truth, really not that risky[,]" or antitrust or product-liability cases, where a government investigation or product recall can reduce the risk taken on by plaintiffs' counsel, ERISA cases are generally operating on their own.  *See In Marsh ERISA Litig.*, 265 F.R.D. 128, 147 (S.D.N.Y. 2010).  When Plaintiffs filed this case in 2015, the Supreme Court's decision in *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014), was still relatively recent, and while a few scattered duty-of-prudence cases against employee stock fund fiduciaries had survived a motion to dismiss, the majority of post-*Dudenhoeffer* cases

were being dismissed.  One year into this litigation, the Supreme Court issued its follow-up opinion in *Amgen*; since then, no duty-of-prudence claim against employee stock fund fiduciaries has survived a motion to dismiss—except this case.

In addition, unlike many ERISA employee stock fund cases, where a parallel securities action defrays much of the litigation cost and effort to be undertaken by ERISA plaintiffs' counsel, there was no parallel case here, because the securities case against IBM was dismissed by this Court.  *See Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers Local #6 Pension Fund v. IBM*, 205 F. Supp. 3d 527 (S.D.N.Y. 2016).

Nevertheless, Class Counsel continued to prosecute this case, even after it was dismissed by this Court twice, winning reversal in the Second Circuit, surviving a trip to the United States Supreme Court, then winning again in the Second Circuit, before preventing a second trip to the Supreme Court by defeating Defendants' second petition for a writ of certiorari.  Class Counsel did all of this on a contingent-fee basis, with no guarantee of obtaining any funds for the Class or of ever being paid for their work.  "The risk of litigation is 'perhaps the foremost factor to be considered in determining whether to award an enhancement.'"  *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 129 (S.D.N.Y. 2009) (Pauley, J.) (quoting *Goldberger*, 209 F.3d at 54)).  There is no doubt that Class Counsel assumed enormous risk over the course of this six-year litigation, which justifies the requested fee award.

Class Counsel's request for 30% of the gross settlement fund is normal and reasonable within this circuit.  *See Seijas v. Republic of Argentina*, 2017 U.S. Dist. LEXIS 64398, at *47-48 (S.D.N.Y. Apr. 27, 2017) ("While a 30% fee is on the higher end of percentages awarded for attorneys' fees in this Circuit, it is reasonable in light of the class

recovery and class counsel's investment in these cases."); *Hicks v. Morgan Stanley & Co.*, 2005 U.S. Dist. LEXIS 24890, at *24-25 (S.D.N.Y. Oct. 24, 2005) ("The 30% fee is consistent with fees awarded in comparable class action settlements in the Second Circuit.") (collecting cases); *In re Beacon Assocs. Litig.*, 2013 U.S. Dist. LEXIS 82192, at *44 (S.D.N.Y. May 9, 2013) ("In this Circuit, courts routinely award attorneys' fees that run to 30% and even a little more of the amount of the common fund.") (citation omitted). Settlements between $4.45 million and $7.0 million have resulted in a median fee award of 29.7%. *See In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 350-51 (S.D.N.Y. 2014) (citing Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical Legal Stud. 811, 837-39 (2010)).

A cross-check of Class Counsel's lodestar confirms the appropriateness of this award.  In cases applying the lodestar method to award fees, "multipliers of between 3 and 4.5 have been common."  *Rabin v. Concord Assets Grp., Inc.*, 1991 WL 275757, at *2 (S.D.N.Y. Dec. 19, 1991) (citation and internal quotation marks omitted); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation"); *Kurzweil v. Philip Morris Cos., Inc.*, 1999 WL 1076105, at *3 (S.D.N.Y. Nov. 30, 1999) (recognizing that multipliers of between 3 and 4.5 are common in federal securities cases).

Class Counsel's lodestar here is $829,662.  The requested fee of 30% of the gross settlement fund, which is $1,425,000, results in a multiplier of approximately 1.7, which is well within the range of reasonableness for a complex, high-risk case such as this one.

Indeed, Class Counsel's lodestar is smaller (and thus their multiplier higher) than would have been the case had multiple firms, or even a larger single firm, likely doing

duplicative work, litigated this case on behalf of the Class.  As discussed above, the majority of the work on this case was performed by one lawyer.  That work included researching, drafting and arguing multiple motion-to-dismiss briefs before this Court; drafting and arguing an appeal before the Second Circuit; twice drafting oppositions to Defendants' cert petition; and arguing before the U.S. Supreme Court against not only a representative of the Solicitor General's Office, but against one of the most renowned Supreme Court oral advocates in history.  Given the mass of dismissals of cases like this one across the country, along with the incredible array of legal talent representing Defendants, it is no small accomplishment that Class Counsel's five-lawyer firm was able to prevail past the pleading stage and achieve a recovery for the Class after six years of advocacy.  The award of a 30% fee will not constitute a windfall, and it is well within the range of awards for settlements of this size in this district.

Public policy militates in favor of the sought award as well:

> Protecting workers' retirement funds is of genuine public interest.  Public policy relies on private sector enforcement of the pension laws as a necessary adjunct to Department of Labor intervention.  Counsel's fees should reflect the important public policy goal of "providing lawyers with sufficient incentive to bring common fund cases that serve the public interest."  [*Goldberger*, 209 F.3d] at 51.  While court awarded fees must be reasonable, setting fees too low or randomly will create poor incentives to bringing large class action cases.

*Colgate*, 36 F. Supp. 3d at 353 (further citations omitted).

## II.    Class Counsel's Request for Reimbursement of Expenses Is Appropriate

Class Counsel respectfully requests that the Court grant their application for reimbursement of $90,861.89 in reasonable expenses.  All of these expenses are of the type

typically billed by attorneys to paying clients in the marketplace.  *See Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients") (citation and internal quotation marks omitted); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 178 (S.D.N.Y. 2007) ("Counsel is entitled to reimbursement from the common fund for reasonable litigation expenses") (citation omitted).  All of the expenses for which Class Counsel seek reimbursement fall under this umbrella, including copying and printing costs, services rendered by a respected damages expert in connection with mediation discussions, court fees at various appellate courts, and travel expenses associated with preparing for argument at the United States Supreme Court. (*See* Bonderoff Decl. ¶ 16.)  To date, no member of the Class has objected to Class Counsel's request for reimbursement of expenses.

### III.    Named Plaintiffs' Request for Case Contribution Awards Is Appropriate

Each of the Named Plaintiffs respectfully requests a Case Contribution Award of $10,000.  Each Named Plaintiff was an active participant in this lengthy litigation, reviewing and consulting on draft complaints; communicating on a regular basis with Class Counsel regarding the case as it made its way up and down the appellate courts; helping to prepare interrogatory responses and gather documents for production; and beginning to prepare for their depositions, which were in the process of being scheduled when the case went into mediation.  (*See* Bonderoff Decl. ¶¶ xx.)

The Case Contribution Award amount for each Named Plaintiff is consistent with similar awards granted in this district.  *See, e.g., Bd. of Trs. of AFTRA Ret. Fund v.*

*JPMorgan Chase Bank, N.A.*, 2012 U.S. Dist. LEXIS 79418, at *8-9 (S.D.N.Y. June 7,

2012) (awarding $50,000 to each named plaintiff in ERISA action settlement); *In re Marsh*

*ERISA Litig.*, 265 F.R.D. 128, 151 (S.D.N.Y. 2010) (awarding $15,000 to each of three

named plaintiffs); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 264 (S.D.N.Y. 2003) (awarding

$15,000 to class representatives); *see also Colgate*, 36 F. Supp. 3d at 354 (awarding $5,000

to each of six named plaintiffs for a total of $30,000).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Class

Counsel's fee and expenses application and award each Named Plaintiff a $10,000 Case

Contribution Award.


New York, New York
June 25, 2021


By: */s/ Samuel E. Bonderoff*
Samuel E. Bonderoff

Jacob H. Zamansky
Edward H. Glenn, Jr.
Matthew P. Hendrickson
**ZAMANSKY LLC**
50 Broadway, 32nd Floor
New York, NY 10004
Telephone: (212) 742-1414
Facsimile: (212) 742-1177
*samuel@zamansky.com*

*Counsel for Plaintiffs and Proposed Class
Counsel*