UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------

LARRY W. JANDER, RICHARD J. WAKSMAN, *and all other individuals similarly situated*,

                Plaintiffs,

-against-

RETIREMENT PLANS COMMITTEE OF IBM, RICHARD CARROLL, MARTIN SCHROETER, and ROBERT WEBER,

                Defendants.

------------------------------------------

15cv3781

MEMORANDUM & ORDER

Colleen McMahon, Senior United States District Judge:

        In accordance with Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs Larry W. Jander and Richard J. Waksman move for final approval of a settlement resolving all claims in this Action, certification of the Settlement Class,[1] and approval of the Plan of Allocation (collectively, the "Settlement"). For the following reasons, the Settlement is APPROVED.

        Plaintiffs also move for an award of attorneys' fees in the amount of 30% of the gross Settlement Fund, or $1,425,000; reimbursement for Plaintiffs' Counsel's litigation expenses in the amount of $90,861.89; and case contribution awards of $10,000 to each of Jander and Waksman. For the following reasons, these amounts are APPROVED.

---

[1] Capitalized terms not otherwise defined have the meaning assigned to them by the parties in the Amended Class Action Settlement Agreement and Release ("Settlement Agreement"). (ECF No. 117.)

1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Jander filed this class action against Defendants Retirement Plans Committee of IBM, Richard Carroll, Martin Schroeter, and Robert Weber on May 15, 2015.  (ECF No. 1.)[2]  Following Defendants' successful motion to dismiss, Plaintiffs filed a second amended complaint on October 21, 2016.  (ECF No. 38.)  The Court granted Defendants' motion to dismiss the second amended complaint, with prejudice, on September 29, 2017.  (ECF No. 56.)

The Second Circuit reversed the Court's decision on December 10, 2018, after which Defendants filed a petition for writ of certiorari from the United States Supreme Court.  Certiorari was granted on June 3, 2019.  Ret. Plans Comm. of IBM v. Jander, 139 S. Ct. 2667 (2019).  The Supreme Court vacated the Second Circuit's decision and remanded for consideration of other various issues.  See Ret. Plans Comm. of IBM v. Jander, 140 S. Ct. 592, 594–95 (2020).  Ultimately, the Second Circuit reinstated its original opinion denying Defendants' motion to dismiss.  See Jander v. Ret. Plans Comm. of IBM, 962 F.3d 85 (2d Cir. 2020).

Following remand to this district, the parties began to engage in discovery and proceed with the litigation.  In early 2021, the parties engaged in an effort to settle this case through mediation.  (ECF No. 123, at 3.)  The parties conducted a mediation session on February 15, 2021, and after further discussion, ultimately agreed to terms of settlement on February 19, 2021.  The parties executed a Class Action Settlement and Release on April 2, 2021.  (ECF No.

---

[2]   Waksman joined the lawsuit in an amended complaint filed on August 13, 2015.  (ECF No. 117.)

123, at 3.) The settlement provides for Defendants to make a $4,750,000 payment to a Qualified Settlement Fund to be allocated pursuant to a Plan of Allocation.

On April 2, 2021, Plaintiffs filed a motion to preliminarily approve the class action settlement. (ECF No. 114.) The parties appeared on April 12, 2021 to discuss preliminary approval and later executed and filed an amended class action settlement agreement and release addressing various concerns raised by the Court. (ECF No. 117.) On April 28, 2021, the Court entered an order preliminarily approving the Settlement and setting a fairness hearing for July 21, 2021. (ECF No. 118.)

Following entry of the preliminary approval order, the parties carried out the Notice Plan by mailing more than 50,000 copies of the Class Notice to Settlement Class Members, caused the Class Notice to be published in USA Today and PR Newswire, and created a publicly available website to provide information regarding the proposed Settlement to Settlement Class Members. While several dozen Settlement Class Members contacted Plaintiffs' Counsel with questions, none filed or expressed an objection to the Settlement.

All of the above took place under the wise supervision of my dear colleague, The Hon. William H. Pauley III. Sadly, Judge Pauley died on July 6, 2021 prior to the scheduled fairness hearing. This Court has taken up the case for the purpose of presiding at that hearing and ruling on the fairness of the settlement and the fee request.

DISCUSSION

I.	Final Settlement Approval

    A.	Legal Standard

"The settlement of complex class action litigation is favored by the Courts." In re Warner Chilcott Ltd. Sec. Litig, 2008 WL 5110904, at *1 (S.D.N.Y. Nov. 20 2008); In re Prudential Sec. Inc. Ltd. P'ships Litig., 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settlement and quieting litigation, and this is particularly true in class actions."). However, because a class action "may be settled . . . only with the court's approval," (Fed. R. Civ. P. 23(e)), "a court must 'carefully scrutinized the settlement to ensure its fairness, adequacy and reasonableness, and that it was not the product of collusion." Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc., 2021 WL 76328, at *1 (S.D.N.Y. Jan. 7, 2021) (quoting D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001)).

In City of Detroit v. Grinnell, the Second Circuit identified nine factors for courts to consider when determining whether a class action settlement is substantially fair and worthy of approval:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d 448, 463 (2d Cir. 1974). "[N]ot every factor must weigh in favor of settlement, 'rather the court should consider the totality of these factors in light of the particular circumstances.'"

In re Glob. Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (quoting Thompson Metropolitan Life Ins. Co., 216 F.R.D. 55, 61 (S.D.N.Y. 2003).).

  B. Application

    1. The Complexity, Expense, and Likely Duration of the Litigation

This ERISA class action is manifestly complex. See In re Schering-Plough Corp. Enhance ERISA Litig., 2012 WL 1964451, at *5 (D.N.J. May 31, 2012) (finding that ERISA breach of fiduciary duty actions "involves a complex and rapidly evolving area of law."). Moreover, it has already taken more than five years to litigate the sufficiency of the allegations. And litigating this case to recovery for the Settlement Class will require the time an expense of discovery, trial, and possibly further appeal. Because of "the lengthy, costly, and uncertain course of further litigation, the settlement provides a significant and expeditious route to recovery for the Class," and "it may be preferable 'to take the bird in the hand instead of the prospective flock in the bush.'" Prudential, 163 F.R.D. at 210 (quoting Oppenlander v. Standard Oil Co., 64 F.R.D. 597, 624 (D. Colo. 1974)); see also In re AOL Time Warner, Inc. Sec. & ERISA Litig., 2006 U.S. Dist. LEXIS 17588, at *31 (S.D.N.Y. Apr. 6, 2006). As such, this factor strongly weighs in favor of approval.

    2. The Reaction of the Class to the Settlement

"The reaction of the class to the settlement is perhaps the most significant factor to be weighted in considering its adequacy." In re Facebook, Inc., IPO Sec. & Derivative Litig., 343 F. Supp. 3d 394, 410 (S.D.N.Y. 2018), aff'd sub nom. In re Facebook, Inc., 822 F. App'x 40 (2d Cir. 2020) (quotation marks omitted). In this case, more than 50,000 thousand copies of the Class Notice were mailed to potential Settlement Class Members and no timely objections to the Settlement were filed.

On the morning of the fairness hearing in this matter, this Court received a belated objection filed by Peter Lindner. (See ECF No. 134.) Lindner was asked if he was present at the fairness hearing, but he did not respond and avail himself of the opportunity to speak. Regardless, Lindner's objection is both untimely, (See ECF No. 118, at 8 (objections must be filed no later than seven calendar days before the fairness hearing)), and completely lacks merit, as it relates to an unrelated case that Lindner filed long ago against IBM.[3]

As Lindner's "objection" is unrelated to this case or the Settlement, this Court proceeds as if though there are no objections. "[T]he absence of objections by the class is extraordinarily positive and weighs in favor of settlement." Dial Corp. v. News Corp., 317 F.R.D. 426, 431 (S.D.N.Y. 2016); see also Puddu v. 6d Glob. Techs., 2021 WL 1910656, at *4 (S.D.N.Y. May 12, 2021) ("a lack of objection is often seen as strong evidence of the settlement's fairness"). Here, this factor strongly favors approval.

### 3. The Stage of the Proceedings and the Amount of Discovery Completed

Fact discovery is at a relatively early stage, though Plaintiffs' Counsel have had the opportunity to consider the limited discovery produced far by Defendants and additional information provided in connection with the mediation. This factor weighs in favor of approval, although not strongly.

### 4. The Risks of Establishing Liability, Damages, and Maintaining the Class Through Trial

"Courts generally consider the fourth, fifth, and sixth Grinnell factors together." Dial Corp., 317 F.R.D. at 432. With respect to establishing liability, Plaintiffs will have to

---

[3]  In that case, Judge Preska barred Lindner from making further motions and submitting documents without first obtaining permission from the court following the submission of frivolous documents. (See Lindner v. Int'l Bus. Machines Corp., 06-cv-4751 (ECF. No. 175).) This Court cautions Lindner that he should not attempt to engage in similar conduct in this case.

prove that IBM's stock was indeed artificially inflated during the Class Period, and that the drop in the stock price that occurred at the conclusion of the Class Period can be attributed, at least in part, to the revelation of the value of the Microelectronics business. Defendants will diligently contest this issue and argue that the stock-price drop was attributable to other factors and that the market was aware of the true value of Microelectronics before IBM announced its sale. See Athale v. Sinotech Energy Ltd., 2013 WL 11310686, at *5 (S.D.N.Y. Sep. 4, 2013) (finding this factor satisfied because "[p]roving damages in [securities] actions can also be complicated and uncertain, particularly in cases such as this that require proof of loss causation"). Defendants will also argue that the Company's decision not to write down the value of Microelectronics before the end of the Class Period was consistent with generally accepted accounting principles. Accordingly, the risk in establishing damages is real and counsels in favor of approving the settlement. See Dial Corp., 317 F.R.D. at 432 ("Plaintiffs would have encountered additional challenges to proving damages given the parties' dueling expert reports."). Moreover, "[a]s with any complicated securities action, the class faced the very real risk that a jury could be swayed by experts . . . who could minimize or eliminate the amount of Plaintiffs' losses." Bank of Am. Corp., 318 F.R.D. at 24 (quotation marks omitted). Finally, the fact that Plaintiffs' have not yet moved for class certification presents additional risks to Plaintiffs and the Proposed Class. Overall, these factors counsel in favor of approving the settlement.

### 5. The Ability of Defendants to Withstand a Greater Judgment

Defendants could likely withstand a greater judgment, however, "while relevant to settlement approval, the ability of defendants to withstand greater judgment does not alone suggest the settlement is unfair or unreasonable."

In re Facebook, Inc. IPO Sec. & Derivative Litig., 2015 WL 6971424, at *5 (S.D.N.Y. Nov. 9, 2015); see also D'Amato, 236 F.3d at 86 ("[T]his factor, standing alone, does not suggest that the settlement is unfair.").

      6.      <u>The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All the Attendant Risks of the Litigation</u>

"The final two Grinnell factors are typically considered together." Dial Corp., 317 F.R.D. at 432. Here, the Settlement amount of $4.75 million represents approximately 25.8% of the most optimistic estimate of recoverable damages. However, "[i]t is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." Morris v. Affinity Health Plan, Inc., 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012). "In analyzing the size of the settlement compared to the best possible recovery and in view of the attendant risks, the issue for the Court is not whether the Settlement represents the 'best possible recovery,' but how the Settlement relates to the strengths and weaknesses of the case." In re Flag Telecom Holdings Ltd. Sec. Litig., 2010 WL 4537550, at *20 (S.D.N.Y. Nov. 8, 2010).

As discussed above, Defendants have numerous arguments to that could prevent Plaintiffs from achieving any recovery. Defendants will argue that, because the Plan was a net seller of IBM stock and entitled to no recovery at all. In light of these factors, the Settlement fund is reasonable.

      7.      <u>Aggregation of All Factors</u>

Overall, the Grinnell factors counsel in favor of approving the Settlement. No member of the Proposed Class has objected to the Settlement or opted out, and this action was

8

contested at each stage of the litigation.  Additionally, Plaintiffs face substantial risk in proving misrepresentation, scienter, and loss causation.  Accordingly, this Court approves the Settlement.

    II.    <u>Certification of the Proposed Settlement Class And Appointment of Class Representatives and Class Counsel</u>

On preliminary review of the Settlement, the Court found that the proposed Settlement on a class-wide basis was adequate and met the standards set forth in Fed. R. Civ. P. 23.  Plaintiffs now seek: (i) the certification of the Settlement Class in the Action pursuant to Federal Rule of Civil Procedure 23(b)(1); (ii) the designation of Named Plaintiffs as representatives of the Settlement Class; and (iii) the designation of Zamansky LLC as Class Counsel for the Settlement Class.

    A.    <u>Certification of The Proposed Settlement Class</u>

"Rule 23 imposes two prerequisites for class certification.  First, the party seeking certification must demonstrate that the proposed class meets the requirements of Rule 23(a): numerosity, commonality, typicality and adequacy of representation.  Second, the party seeking certification must show that the proposed class action falls within one of the types maintainable under Rule 23(b)."  <u>Bricker v. Planet Hollywood New York, L.P.</u>, 2009 WL 2603149, at *1 (S.D.N.Y. Aug. 13, 2009) (citations omitted).

    1.    <u>Numerosity</u>

Where a class consists of 40 or more members, numerosity is presumed.  <u>See Consol. Rail Corp. v. Town of Hyde Park</u>, 47 F.3d 473, 483 (2d Cir. 1995).  Here, it is estimated that the number of Class members is in the tens of thousands, meaning numerosity requirement is met.

### 2. Commonality

"The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact." Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997). "By their very nature, ERISA actions often present common questions of law and fact, and are therefore frequently certified as class action. 'In general, the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries.'" Marsh, 265 F.R.D. at 142-43 (quoting Banyai v. Mazur, 205 F.R.D. 160, 163 (S.D.N.Y. 2002)). As such, this requirement is also met.

### 3. Typicality

Typicality "does not require that all of the putative class members' claims are identical[,]" but rather "concerns whether 'each class member's claim arises from the same course of events, and [whether] each class member makes similar legal arguments to prove the defendant's liability.'" Marsh, 265 F.R.D. at 143 (quoting Cromer Fin. Ltd. v. Berger, 205 F.R.D. 113, 122 (S.D.N.Y. 2001)). The typicality requirement 'is often met in putative class actions brought for breaches of fiduciary duty under ERISA." Marsh, 265 F.R.D. at 143 (citing Koch v. Dwyer, 2001 WL 289972, at *3 (S.D.N.Y. Mar. 23, 2001)).

Here, Plaintiffs, like the other members of the Settlement Class, held shares of the IBM Stock Fund during the Class Period. They allege that they suffered economic loss as a direct result of Defendants' alleged breaches of their fiduciary duties. Under these circumstances, Plaintiffs have shown typicality.

### 4. Adequacy

Adequacy is satisfied where "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To ensure that all

10

members of the class are adequately represented, district courts must make sure that the members of the class possess the same interests, and that no fundamental conflicts exist among the members." Charron v. Wiener, 731 F.3d 241, 249 (2d Cir. 2013). Plaintiffs Jander and Waksman have devoted substantial time and effort to this action, monitoring the case for over six years, responding to discovery requests, and reviewing pleadings. Their interests are aligned with the rest of the Class. And as a result, Plaintiffs have established adequacy.

     5.     Rule 23(b)(1)

Courts generally certify ERISA classes under Rule 23(b)(1)(B) where, as here, the plaintiffs allege breaches of fiduciary duties, because such actions are, by law, representative actions. Marsh, 265 F.R.D. at 143–44 (collecting cases). "In light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1)(B) class, as numerous courts have held." In re Schering-Plough Corp. ERISA Litig., 589 F.3d 585, 604 (3d Cir. 2009) (collecting cases). Accordingly, this Court certifies the Proposed Class for purposes of the Settlement and appoints Jander and Waksman as class representatives.

    B.    Appointment of Class Counsel

Federal Rule 23(g) provides, in relevant part:

> (1)    Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court: (A) must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g). Plaintiffs' Counsel are qualified, experienced attorneys who have, for

11

more than six years, prosecuted this action, including litigating the case to the United States Supreme Court. Plaintiffs' Counsel have demonstrated their knowledge and their commitment to this case. Accordingly, the Court appoints Zamansky LLC as Class Counsel.

III.     The Plan of Allocation

"As a general rule, the adequacy of an allocation plan turns on whether the proposed apportionment is fair and reasonable under the particular circumstances of the case. An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel[.]" Precision Assocs. v. Panalpina World Transp. (Holding) Ltd., 2015 U.S. Dist. LEXIS 1523688, at *32 (E.D.N.Y. Nov. 10, 2015) (internal citations omitted).

"The standard for approval of a plan of allocation is the same as the standard for approving a settlement: namely, it must be fair and adequate." In re Top Tankers, Inc. Sec. Litig., 2008 WL 2944620, at *11 (S.D.N.Y. July 31, 2008) (quotation marks omitted). "[I]n determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel." In re Giant Interactive Grp., Inc. Sec. Litig., 279 F.R.D. 151, 163 (S.D.N.Y. 2011) (quotation marks omitted); see also In re Top Tankers, 2008 WL 2944620, at *11 ("If the plan of allocation is formulated by competent and experienced class counsel, an allocation plan need only have a reasonable, rational basis." (quotation marks omitted)). Here, the Plan of Allocation—which was developed by Class Counsel—provides for a pro rata distribution of the Qualified Settlement Fund to Class members whose Plan accounts were invested in the IBM Stock Fund relative to their net losses as determined by a straightforward formula. A "plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." In re Oracle Sec. Litig., 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994). Because the Plan of

12

Allocation appears fair and adequate and comes by the recommendation of experienced Class Counsel, it is approved.

    IV.        <u>Attorneys' Fees, Expenses, and Case Contribution Awards</u>

Class Counsel seek an award of attorneys' fees of $1,425,000, which constitutes 30% of the $4,750,000 settlement fund, as well as reimbursement of litigation expenses in the amount of $90,861.89. In addition, Jander and Waksman each request Case Contribution Awards in the amount of $10,000.

    A.        <u>Attorneys' Fees</u>

A Court "must carefully scrutinize lead counsel's application for attorneys' fees to 'ensure that the interests of the class members are not subordinated to the interests of . . . class counsel." <u>Lexmark</u>, 2021 WL 76328, at *4 (quoting <u>Maywalt v. Parker & Parsley Petroleum Co.</u>, 67 F.3d 1072, 1078 (2d Cir. 1995)). The Court is obliged "'to act as a fiduciary who must serve as a guardian of the rights of absent class members.'" <u>Lexmark</u>, 2021 WL 76328, at *4 (quoting <u>McDaniel v. Cty. of Schenectady</u>, 595 F.3d 411, 419 (2d Cir. 2010)).

"The trend in the Second Circuit is to assess a fee application using the 'percentage of the fund' approach, which 'assigns a proportion of the common settlement fund toward payment of attorneys' fees.'" <u>Lexmark</u>, 2021 WL 76328, at *4 (quoting <u>Dial</u>, 317 F.R.D. at 433). "As a 'cross-check on the reasonableness of the requested percentage,' however, courts also look to the lodestar multiplier, which should be a reasonable multiple of the total number of hours billed at a standard hourly rate." <u>Lexmark</u>, 2021 WL 76328, at *4 (quoting <u>Goldberger v. Integrated Res., Inc.</u>, 209 F.3d 42, 53 (2d Cir. 2000)). Informing both of these analyses should be the six factors enumerated by the Second Circuit in <u>Goldberger</u>: "(1) the time and labor

expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." Goldberger, 209 F.3d at 50 (quoting In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig., 724 F. Supp. 160, 163 (S.D.N.Y. 1989)) (quotation marks omitted).

Class Counsel's request for 30% of the gross settlement fund is reasonable within this circuit. See Seijas v. Republic of Argentina, 2017 WL 1511352, at *13 (S.D.N.Y. Apr. 27, 2017) ("While a 30% fee is on the higher end of percentages awarded for attorneys' fees in this Circuit, it is reasonable in light of the class recovery and class counsel's investment in these cases."); Hicks v. Morgan Stanley & Co., 2005 U.S. Dist. LEXIS 24890, at *24–25 (S.D.N.Y. Oct. 24, 2005) ("The 30% fee is consistent with fees awarded in comparable class action settlements in the Second Circuit.") (collecting cases).

A cross-check of Class Counsel's lodestar confirms the reasonableness of the requested award. "[M]ultipliers of between 3 and 4.5 have been common," in cases applying the lodestar method. Rabin v. Concord Assets Grp., Inc., 1991 WL 275757, at *2 (S.D.N.Y. Dec. 19, 1991) (citation and internal quotation marks omitted). Class Counsel's lodestar here is $829,662. The requested fee of 30% of the gross settlement fund, which is $1,425,000, results in a multiplier of approximately 1.7, which is within the range of reasonableness.

Regarding the Goldberger factors, Class Counsel has expended significant time and labor over the past six years to litigate this case through multiple motions to dismiss and appeals, including an appeal to the Supreme Court. At each stage, Class Counsel took on the risk that the claims would fail leaving Class Counsel with nothing. Finally, there is no public policy

consideration suggesting a reduction in the requested fees. Accordingly, Class Counsel's requested percentage is in line with the Goldberger factors.

B. Class Counsel's Request for Reimbursement of Expenses

Class Counsel requests approval for reimbursement of $90,861.89 in expenses. See Miltland Raleigh- Durham v. Myers, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients") (citation and internal quotation marks omitted). The expenses for which Class Counsel seek reimbursement are of the type normally reimbursed. And no member of the Class has objected to Class Counsel's request for reimbursement of expenses. Accordingly, Class Counsel's request for reimbursement is granted.

C. Case Contribution Awards

Finally, Jander and Waksman each request a Case Contribution Award of $10,000. This is consistent similar awards granted in this district. See, e.g., Bd. of Trs. of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A., 2012 U.S. Dist. LEXIS 79418, at *8–9 (S.D.N.Y. June 7, 2012) (awarding $50,000 to each named plaintiff); In re Marsh ERISA Litig., 265 F.R.D. 128, 151 (S.D.N.Y. 2010) (awarding $15,000 to each of three named plaintiffs); Strougo v. Bassini, 258 F. Supp. 2d 254, 264 (S.D.N.Y. 2003) (awarding $15,000 to class representatives). Accordingly, the Case Contribution Awards to Jander and Waksman are approved.

CONCLUSION

For the foregoing reasons, the motion for final approval of the settlement is granted and the motion for an award of attorneys' fees and expenses and case contribution award is granted. The Proposed Settlement and the Plan of Allocation are approved. In addition, Class Counsel is awarded attorneys' fees in the amount of $1,425,000, representing 30% of the Settlement Fund. These attorneys' fees may be disbursed from the CRIS account once 75% of the Net Settlement Fund has been distributed. Moreover, Class Counsel shall be reimbursed for $90,861.89 in litigation expenses forthwith. Finally, Jander and Waksman may each be disbursed $10,000 forthwith.

Additionally, on July 20, 2021, Defendants moved, unopposed, for a disbursement of funds from the Qualified Settlement Fund in order to reimburse IBM for fees associated with the engagement of an Independent Fiduciary to review the Settlement pursuant to the Amended Settlement Stipulation. Defendants' motion is granted.

The Clerk of Court is directed to terminate all pending motions and to mark this case closed.

Dated: July 22, 2021
      New York, New York

_____
District Judge

BY ECF TO ALL PARTIES